**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| v. | ) | **NO. 0860 4:17CR00293-1 BSM** |
| | ) | |
| **TROY R. LOADHOLT** | ) | |

**SENTENCING MEMORANDUM**

The Defendant, Mr. Loadholt, through undersigned counsel, submits the following

sentencing memorandum:

The primary issues for the Court to resolve at sentencing are the quantity of controlled

substances reasonably foreseeable to Mr. Loadholt and therefore attributable to him and Mr.

Loadholt's proper criminal history score/whether he qualifies as a career offender, and acceptance

of reliability.

> **I.**     **Quantity Attributable to Troy Loadholt**

The Government contends that the quantity attributable to the Defendant is 89 kilograms or

more, however, such weight is severely overstated. The Government points towards the testimony

of alleged co-conspirators during trial of which no counsel for Mr. Loadholt was present, and no

objections were made on his behalf.

Courts may consider uncorroborated hearsay evidence so long as the evidence has sufficient

indicia of reliability to support its accuracy and the defendant is given a chance to rebut or explain it.

*United States v. Garcia*, 774 F.3d 472, 476 (8th Cir. 2014). For conspiracy cases, courts may attribute

drug quantities that the defendant did not directly handle when those transactions were in

furtherance of the conspiracy and either "known to the defendant" and or "reasonably foreseeable

to him." *United States v. Shaw*, 965 F.3d 921, 927 (8th Cir. 2020). The Court must find by a

preponderance of the evidence that the transaction was (1) in furtherance of the conspiracy and (2) either known to the defendant or reasonably foreseeable to him.

The Government wishes to attribute every package sent via the FedEx account to Mr. Loadholt as well as additional unsubstantiated testimony of co-conspirators pertaining to unmeasured and speculative weights. Of all the packages that were allegedly sent through this account, only three occasions exist where such packages were seized and examined by law enforcement – October 6, 2016, November 16, 2016, and January 12, 2017. These are all listed in the Government's sentencing memorandum. United States Sentencing Memo., pgs. 8, 9, 11. The remaining packages are the Government's assertion that the contents were methamphetamine. The Court would be left to speculate as to the weight as well. For example, the January 12, 2017 package weighed approximately 5 pounds, but at trial it was stipulated that the weight was 1,743 grams or 3.84 pounds. This equates to a difference of 1.16 pounds. If you were to spread that discrepancy across the remaining packages, there is an additional weight of 24 pounds, which is roughly 10 kilograms that is not purported illegal substances. Furthermore, there is not sufficient proof tying Mr. Loadholt to these packages. The Government during trial failed to flesh out additionally details connecting these packages to Mr. Loadholt. These packages cannot be attributed to Mr. Loadholt with sufficient indicia of reliability.

Numerous packages sent from California were sent at a time when Mr. Loadholt was not even within the State according to the United States. The Government claims that Mr. Loadholt was in Arkansas until May 31, 2016, after which he left and moved to California. United States Sentencing Memo., pg. 9. The following dates are listed by the Government as shipment dates: January 1, 2016, January 18, 2016, January 20, 2016, February 26, 2016, March 30, 2016, and April 20, 2016. The combined approximate weight of these packages is approximately 48 pounds or 21 kilograms. All of these dates, packages were sent from California to Arkansas at a time when Mr.

Loadholt, by the Government's own assertion, was in the State of Arkansas. He could not have sent the packages from California. And of those packages, nothing within them connects to Mr. Loadholt. Nothing present has shown that Mr. Loadholt had any knowledge of these packages. They cannot be attributed to Mr. Loadholt.

The quantity of methamphetamine attributable to Mr. Loadholt should be based on evidence and testimony that was either corroborated or otherwise sufficient indicia of reliability. The Government points towards four dates of packages that coincide with Mr. Loadholt's Facebook account. The Defendant agrees to these packages being attributable to him, however he believes that the weights are overstated. As set forth in the Government's memorandum the proof at trial details two instances where packages were intercepted by law enforcement and subsequently weighed to determine the true weight of the methamphetamine versus the total shipped weight. (United States Sentencing Memo., pgs. 8-9, 11-12). The packages have a combined total weight of 6.80389 kilograms. The actual weight of determined methamphetamine within those packages was 3.588 kilograms. The average percentage of methamphetamine within the packages amounts to 52.7 percent. The total weight for the Facebook message packages (June 24, 2016, July 12, 2016, December 20, 2016, and December 27, 2016) is 20 pounds or 9.07185 kilograms. With the reduction based on the percentage above, the attributable amount to Mr. Loadholt for these packages is 4.781 kilograms. This is attributable to Mr. Loadholt due to the corroboration unlike the remaining packages that have been alleged by the Government. The remaining drugs attributable to Mr. Loadholt is the less than two grams that Brittany Gideon was arrested for in May of 2016 during a traffic stop as explained in the Government's memorandum. (United States Sentencing Memo., pg. 9).

## II.    Credibility and Indicia of Reliability

The Government is relying on the testimony of indicted and unindicted co-conspirators to prove factual matters relating to Mr. Loadholt.  The witnesses/testimony relied on by the Government have significant issues that undermine their credibility and do not possess sufficient indicia of reliability for the Court to consider as it relates to Mr. Loadholt.   These are witnesses called by the Government in their trial against Marcus Millsap, a co-conspirator of Mr. Loadholt. The attorney for Mr. Millsap failed to object to inadmissible testimony as it relates to Mr. Loadholt. The Government failed to prove the foundation for the witnesses' testimony or the basis for their knowledge.  This testimony was not challenged at Mr. Millsaps trial and the Government did not sufficiently develop any testimony as it relates to Mr. Loadholt to allow the for the Court to consider at this sentencing.

### Brittany Gideon, aka Brittany Ferguson, aka Brittany Sowell

The Government relies extensively on the testimony of Brittany Gideon.  It is important to note the discrepancies in the details provided by Ms. Gideon in her testimony regarding other c0-conspirators and her testimony regarding Mr. Loadholt.  Her testimony as it relates to other co-conspirators is specific and detailed.  As to Mr. Loadholt, her testimony is vague, general and lacking in any details that would indicate credibility or reliability.

As an example, when Ms. Gideon testified regarding certain activities of David Singleton, she testified to personally being present, who all was present, what they were doing, where they were located, the time frame of the incident and what specifically happened.  (Tr. Vol. 3, 412-414).  When Ms. Gideon was testifying regarding Darlene Walker, she testified to being personally present, Ms. Walker's methodology in tracking packages, the locations of picking up packages, burning packages on the grill and so forth.  (Tr. Vol. 3, 438-442).  When Ms. Gideon testified regarding Mr. Loadholt, her testimony is devoid of specific details, her personal knowledge or the foundation for her

information is absent.  For example, when Ms. Gideon testified that she acquired methamphetamine from Mr. Loadholt through his girlfriend, Brandy Wells, her testimony is speculative and conclusory. She testified, "I was friends with his girlfriend, Brandy Wells, and I started getting methamphetamine from him through her in half ounce and once quantifies."  (Tr. Vol. 3, 430).  At no time does the Government elicit from Ms. Gideon how she knows the methamphetamine is from Mr. Loadholt, whether it is from hearsay, speculation, assumption or other admissible means.

The Government misstates in their sentencing memorandum that Brittany Gideon testified "she helped Mr. Loadholt facilitate the shipments of methamphetamine by acquiring several addresses for Mr. Loadholt."  (Govt's Sent. Memo. 7).  What Ms. Gideon testified to, was that she obtained 1 (one) address for him.  (Tr. Vol. 3, 430-431).  This is an example of the Government conflating, confusing and misstating the testimony against Mr. Loadholt in order to increase his offense level calculations.

The Government misstates in their sentencing memorandum that Brittany Gideon testified that she took a trip to California with Darlene Walker to deliver thousands of dollars to Mr. Loadholt. (Govt's Sent. Memo. 19).  What Ms. Gideon testified to was that Darlene (Walker) and her took money to California and Troy (Mr. Loadholt) lived out there.  (Tr. Vol. 3, 435-436).  She never states that she delivered money to Mr. Loadholt.  The plain reading of the transcript indicates that she was delivering money to Borne Banks, not Mr. Loadholt.  Furthermore, the testimony of Ms. Gideon regarding this issue is the Government essentially correcting Ms. Gideon's answers and putting words into her mouth.  The exchange between the Government and Ms. Gideon is:

> *Q. Did you ever make any trips anywhere to deliver money?*
> *A. Yes, ma'am.*
> *Q. Where?*
> *A. Texas.*
> *Q. Was it California or Texas?*
> *A. California. Sorry. I was confused. Kareem lived in Texas, too, at the time. I meant California. I made a trip there.*

> *Q. Did you go to Texas, too, or just California?*
> *A. Just California.*

(Tr. Vol. 3, 436). This is another example of the Government conflating, confusing, exaggerating and misstating the testimony to increase Mr. Loadholt's offense level.

Ms. Gideon's credibility is also suspect. The Government relies upon an incident on May 31, 2016, where Ms. Gideon was arrested for possession of methamphetamine when she was with Mr. Loadholt. Ms. Gideon testified that she was with Mr. Loadholt and after they got pulled over, Mr. Loadholt handed her an ounce of meth to put down her pants. (Tr. Vol. 3, 434). This appears to be an exaggeration and a fabrication of details by the Government and Ms. Gideon to make Mr. Loadholt appear worse. From the felony information and attached statement of facts supporting probable cause from that incident, Ms. Gideon, then Ms. Ferguson, gave a false name to law enforcement to avoid an active arrest warrant and had less than 2 grams of methamphetamine on her person, was also in possession of marijuana. (Def's Sent. Ex. 1).

It is obvious that Ms. Gideon's is a liar whose testimony regarding Mr. Loadholt is devoid of specificity, devoid of detail, rife with falsehoods and exaggerations. It is equally obvious that Ms. Gideon will testify to whatever the Government wants her to say.

**Kelley Duncan**

The Government relies on the previous testimony of Kelley Duncan to support the quantity of controlled substances attributable to Mr. Loadholt. In their sentencing memorandum, the Government leave out material facts and misstates Mr. Duncan's testimony.

The Government references Mr. Duncan's testimony as it relates to Mr. Loadholt, saying that Mr. Duncan went to Mr. Gullett's residence to "confront him." (Govt's Sent. Memo., 14). What Mr. Duncan's testimony actually was that Duncan was going over to Mr. Gullett's residence to rob him. (Tr. Vol. 4, 568-569).

As it relates to Mr. Duncan's testimony regarding Mr. Loadholt's alleged involvement, reviewing the transcript of the testimony is insightful. Mr. Duncan's testimony is as follows:

> Q. Tell the jury what happened.
> A. I got to his backyard and I seen a crew of people inside breaking down methamphetamines.
> Q. Who was inside?
> A. Had Wesley, Jesse,
> Q. Jesse?
> A. Schreckhise. Melissa Kizer. I can't recall the other person. But I didn't go through with it though…

(Tr. Vol. 4, 569).

> Q. Did you ever see Tricky over at Wesley Gullett's house?
> A. In passing.
> Q. Do you recall whether he was there that night?
> A. He was there that night.
> Q. The night that they were breaking it down?
> A. Yes.

(Tr. Vol. 4, 570). Just as the Government did with Ms. Gideon, the Government did not like the testimony of Mr. Duncan, then using their superior position as an Assistant United States' Attorney, put the words they wanted into the mouth of Mr. Duncan who simply agreed. It is clear from Mr. Duncan's initial answer that Mr. Loadholt was not present at this "breaking down of controlled substances," and that the Government improperly suggested the answer to Mr. Duncan to which he readily agreed.

Furthermore, this event of "breaking down controlled substances" was alleged to occurred after September, 2016. (Govt's Sent. Memo. 14). This is the same time that the Government alleges that Mr. Loadholt is in California sending packages to Arkansas. *See* (Govt's Sent. Memo. 9). The Government's own witnesses contradict the Government's arguments. It's axiomatic to argue that Mr. Loadholt could not be in Arkansas breaking down drugs for Mr. Duncan to observe, if he is across the Country shipping packages of methamphetamine.

The Government is relying on the word of an admitted thief. It is also clear from Mr. Duncan's testimony that he was heavily involved in this conspiracy, but he was not indicted. There

has been no explanation given on why Mr. Duncan was not indicted, nor if Mr. Duncan received any benefit from the Government, or any law enforcement agency, for his testimony.

### Melissa Kizer

The Government conflates Ms. Kizer's testimony and holds Ms. Kizer's individual actions against Mr. Loadholt. The Government negates to mention that the Ms. Kizer, states that the people she allegedly sold drugs to on Mr. Loadholt's behalf, were also Ms. Kizer's customers. (Tr. Vol. 10, 1707-1708). The Government did not bother to differentiate which amounts that were sold were part of this conspiracy.

The Government also failed to establish any credible foundation with respect to Ms. Kizer's testimony regarding Mr. Loadholt allegedly shipping packages of methamphetamines. The question asked by the Government to Ms. Kizer was, "In your time spending with Troy Loadholt, did you learn how the methamphetamine was coming into the Russellville area," Ms. Kizer responded, "Yes ma'am. Tricky would get methamphetamine sent to him from California through FedEx." (Tr. Vol. 10, 1708). The question, did you learn, does not establish a sufficient foundation for the admission of this testimony. It is unclear if the foundation for Ms. Kizer's answer was speculation, personal knowledge, hearsay, etc. Mr. Millsap's attorney did not bother to object to this and the Government failed to establish the basis of this witness's knowledge. The Government should not get to profit for their failure in establishing the foundation of a Ms. Kizer's knowledge as it relates to this issue.

Furthermore, Ms. Kizer's testimony contradicts the Government's position that Mr. Loadholt was the "shipper" of methamphetamine from California; Ms. Kizer testified Mr. Loadholt was the "recipient". Should the Court believe that Ms. Kizer's testimony shows a sufficient indicia of reliability, the Court should also construe her testimony against the Government's contention and purported evidence that Mr. Loadholt was the shipper of methamphetamine, which would drastically lessen the quantity of controlled substance attributable to Mr. Loadholt.

The Government also seeks to convince the Court that Ms. Kizer's testimony regarding her memory regarding a package that was delivered to Fort Smith. The Government seeks to corroborate this testimony with evidence of an unsearched, unseized package that was sent to a completely different city, namely Van Buren, Arkansas. (Govt's Sent. Memo., 15)

**Katherine Ross**

The Government argues that Katherine Ross provided credible testimony that she purchased drugs from Mr. Loadholt, through Brittany Ferguson (Brittany Gideon). (Govt's Sent. Memo. 16). A review of the transcript of Brittany Gideon does not include mention of Ms. Gideon selling any controlled substances to Ms. Ross. The Government's arguments, based on the testimony from the Government's own witnesses, do not corroborate each other and instead serve as further evidence that this witness testimony does not have sufficient indicia of reliability to be considered against Mr. Loadholt.

The Government also relies on Ms. Ross testifying that Mr. Loadholt usually uses women to sell his controlled substances. First, the Government fails to establish how Ms. Ross knows this information, whether it was by speculation, personal knowledge, hearsay, etc. Secondly, Mr. Ross's lack of knowledge was exemplified by her further testimony:

> *Q. And are you familiar with how he sells his product, being methamphetamine? Does he sell it himself, or does he have other people sell it for him?*
> *A. No, through women usually.*
> *Q. So he uses women? And do you know why he uses women?*
> *A. No, ma'am.*
> *Q. Okay. Did he use any other women that you recall?*
> *A. No.*

(Tr. Vol. 8, 1428). This is yet another example of the Government's own witnesses testifying to whatever the Government wanted. The Government is seeking the Court to believe that Mr.

Loadholt uses women (plural), to sell his drugs, but the witness is only aware of one female and has no other knowledge.

<strong>Corey Ford, April Howell, Brooks Gunn</strong>

The information relied on by the Government as it relates to these three witnesses doesn't even purport to name or indicate Mr. Loadholt. Their testimony relates to packages that were shipped to various address in various cities in Arkansas. As argued previously, the packages included in their testimony was never seized, searched, or otherwise determined to have contained methamphetamine. There was no testimony that these packages were from Mr. Loadholt, whether Mr. Loadholt was in Arkansas or California at this time.

### III.    Career Criminal and Criminal History Classification

The Defendant's status as a career criminal is misplaced. As to conviction CR08-65, as stated previously the Defendant believes that this conviction on its face is void due to its illegality. CR-08-65 is an illegal sentence as it was a Class Y felony but the Defendant was sentenced to less than 10 years. Furthermore, as stated above, an illegal sentence cannot be used in the Government's calculation of the Defendant's criminal history score. *United States v. Dixon,* 360 F.3d 845 (8th Cir. 2004). Pursuant to Ark. Code Ann. § 5-4-401(a)(1), the sentence of a Class Y felony shall not be less than 10 years. Arkansas law states that no sentence may be imposed unless a statute permits. *Atkins v. State*, 2014 Ark. 393. A sentence that is within the limits set by statute are deemed legal. *Grissom v. State*, 2013 Ark. 417. However, Arkansas courts have held that a void or illegal sentence is one that fails on its face. *Lovelace v. State*, 301 Ark. 519. In *Parke v. Raley*, the Supreme Court gave deference to a Kentucky statute permitting challenges to the validity of sentencing enhancing guilty plea conviction which required a burden be placed on the defendant to prove the prior conviction invalid. 506 U.S. 20 (1992). A clear reading of the Arkansas statute of which the Defendant was

convicted clearly shows that the imposed sentence was on its face illegal and therefore void. See generally *Hunter v. State*, 2017 Ark. App 256.

Additionally, the Defendant is objecting to the use of both the CR08-65 and CR13-21. In CR08-65, the Defendant was convicted of Delivery of Methamphetamine. In CR13-21, the Defendant was convicted of Possession of Methamphetamine with Purpose to Deliver. Arkansas' definition of methamphetamine is more sweeping and includes isomers that are not included in the federal definition. Arkansas' definition of methamphetamine includes its structural isomers, and the federal definition does not. If a State's definition of a crime "sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense. *United States v. Owen*, 51 F.4th 292, 294 (8th Cir. 2022)(citing *United States v. Vanooy*, 957 F.3d 865, 867 (8th Cir. 2020)). As such, the two convictions do not qualify as the predicate offenses necessary for the Defendant to be classified as a career offender.

### IV.    Enhancement as an Organizer or Leader

The Government claims that a four-level enhancement is warranted based upon Mr. Loadholt being an organizer or leader of criminal activity that involved five or more participants. The logic of this claim fails when analyzing the Government's own previous arguments. The shipment of these packages from California began long before Mr. Loadholt was ever allegedly in the State of California. The person who had access to this FedEx account initially was unindicted Kirk Banks. He worked for Denny's in California. Additionally, the Government references a communication purportedly from Mr. Loadholt to Banks where Banks was "gonna be pissed" about seizure of money. If Mr. Loadholt is the leader and organizer the Government claims, why would he be worried about the temperament of Banks. There is nothing to show that Mr. Loadholt was anything more than a participant, just like the remaining co-conspirators.  The credible evidence developed at trial is that he instructed only one person, Brittany Gideon.

### V.     Acceptance of Responsibility

The Eighth Circuit has established that failure to voluntarily surrender is a relevant, though not dispositive factor in acceptance of responsibility determinations. In *United States v. Crumb*, the Court of Appeals affirmed a district court's grant of a two-point reduction for acceptance of responsibility. 902 F.2d 1337, 1339 (8th Cir. 1990).

In March 1987, a jury convicted Crumb of fifteen counts of credit card fraud in violation of 18 U.S.C. § 1344. *Id.* at 1338. The district court that tried Crumb imposed a sentence of probation. *Id.* After Crumb violated state law, the district court revoked Crumb's probation and ordered him to surrender for service of sentence on a date in April 1988. *Id.* The court later twice extended the date. *Id.* Crumb, however, failed to report to the Federal Correctional Institution at Sandstone, Minnesota, on time. *Id.* A warrant was issued for his arrest, and the United States Marshals Office attempted to find him. *Id.* Crumb later turned himself in before the marshals could apprehend him. At sentencing, the two point reduction for acceptance was given. *Id.*

In *Crumb*, he went to jury trial, was convicted, subsequently sentenced, revoked due to new charges, and finally failed to report as ordered by the court. Still, he was granted a two-point reduction. Mr. Loadholt's case involved the issuance of a warrant based on an indictment, not failing to report after being sentenced. Additionally, in the first draft of the presentence report, it was recommended that he be given a two-point reduction for acceptance of responsibility. It was only after the filing of objections that the recommendation for the reduction was removed.

The Defendant has admitted to the elements of the count for which entered a plea of guilty to at his change of plea hearing. To qualify for a reduction, the Court can consider whether the defendant truthfully admits the conduct comprising the offense(s) of conviction and truthfully admitting or not falsely denying any additional relevant conduct for the defendant is accountable under § 1B1.3. U.S.S.G. §3E1.1. Application Note 1(A). Additionally, a defendant is not required to

volunteer or affirmatively admit relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). *Id.* A Defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection. *Id.* The Defendant has taken and performed the necessary steps to be given the two-point reduction.

## VI.    Prosecutorial Vindictiveness

It is clear from the Government's actions in this case, that the Government is seeking to punish Mr. Loadholt for the exercise of his Constitutional rights.  The Government's arguments and repeated changing of the controlled substances attributable to Mr. Loadholt, clearly evidence a vindictive desire to unreasonably punish Mr. Loadholt.  During the change of plea of this matter, which was a plea to the indictment, absent a plea agreement, the Government chose to read a statement of facts, which included the total amount of methamphetamine that reasonably foreseeable and attributable to Mr. Loadholt.  The amount the Government asserted at that time was 15-45 kilograms.  In the first pre-sentence reports, based on information from the Government, the amount increased to more than 45 kilograms.  Now in the Government's sentencing memorandum the Government is asserting that Mr. Loadholt is responsible for 89 kilograms of methamphetamine.  This case is over 7 years old and the Government has already had a jury trial in this matter.  Certainly the Government was aware of the amount of methamphetamine they believed they could prove that was attributable to Mr. Loadholt.  That amount, based on the Government's own factual basis at the change of plea, was 15-45 kilograms.

Certainly, the Government may take action to punish a defendant for committing a crime, however, punishing a defendant for exercising his valid legal rights is impermissible prosecutorial vindictiveness. *United States v. Goodwin*, 457 U.S. 368, 372, (1982). A defendant can establish prosecutorial vindictiveness through objective evidence that the prosecutor's decision to seek a more

severe sentence was intended to punish the defendant for the exercise of a legal right. *United States v. Rodgers,* 18 F.3d 1425, 1429 (8th Cir. 1994). The defendant is entitled to a presumption of vindictiveness where there exists a reasonable likelihood of vindictiveness, which may arise when prosecutors increase the number or severity of charges. *Id.* at 1429-30 (quoting *Goodwin*, 457 U.S. at 373); *United States v. Punelli*, 892 F.2d 1364, 1371 (8th Cir. 1990).

> The Court in *Goodwin* went on to state,
> The imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity. Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive.

*Goodwin* at 372, 373.

## VII.    Conclusion

The Government is basing its entire case regarding Mr. Loadholt's offense level and any enhancements from the testimony during a trial of a co-conspirator Marcus Millsaps. It is important to note that Mr. Millsaps was also on trial for a RICO Conspiracy and Attempted Murder in Aid of Racketeering, in addition to other counts. Mr. Loadholt did not have anyone present to defend his freedom or his interests.

Mr. Loadholt has set forth in this memorandum and in his objections to the pre-sentence reports several valid grounds for objecting to the evidence offered by the Government. The Government failed on numerous occasions during the trial to "prove up" their case against Mr. Loadholt. That is understandable, as they had bigger fish to fry, as the old saying goes. However, as the Government has not indicated that they will attempt to cure these flaws with additional evidence or testimony during the sentencing, the Government is left with the testimony, as it was presented, flaws in all.

Mr. Loadholt requests an evidentiary sentencing hearing to challenge the disputed and objected to proof regarding the quantity of controlled substances attributable to him and the facts alleged to support an enhancement for being a leader, organizer or manager, to support an enhancement for engaging in a pattern of criminal conduct as a livelihood and that Mr. Loadholt in anyway was required to turn himself in on this matter and that Mr. Loadholt is not entitled to a 2 point reduction for acceptance of responsibility. When a defendant has made a sufficient objection to facts in the pre-sentence report, the Court must state that the challenged facts will not be taken into account at sentencing, or it must make a finding on the disputed issue. *See* Fed. R. Crim. Pro. 32(c)(3)(D). If the latter course is chosen, the government must introduce evidence sufficient to convince the Court by a preponderance of the evidence that the fact in question exists. *United States v. Greene*, 41 F.3d 383 (8th Cir. 1994) (citing *United States v. Hammer*, 3 F.3d 266, 272 (8th Cir. 1993)).

Mr. Loadholt has acknowledged that he is guilty of conspiracy to distribute at least 500 grams of methamphetamine. And the Government with clarification accepted that stipulation after request for confirmation from this Court. Mr. Loadholt admits that the amount attributable to him is 4.783 kilograms as set forth previously. That equals a base offense level of 32.

Respectfully submitted,

DIGBY LAW FIRM
109 West South Street
Benton, Arkansas 72015
Office: (501) 500-9292
Fax:    (501) 500-9293
Email:  bdigby2@yahoo.com

/s/ Bobby R. Digby
BOBBY R. DIGBY II (2005222)